995 F.2d 231
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Ralph FOURMONT, Plaintiff-Appellee,
v.
Sergeant WARNEKA, Defendant-Appellant.
 No. 92-36599.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 25, 1993.*
Decided June 4, 1993.
 
 Before: HUG, WIGGINS and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 The government appeals the district court's preliminary injunction enjoining defendant Sergeant Fred Warneka, or anyone in his official capacity as supervisor of the Washington State Penitentiary Mail Room, from inspecting readily identifiable legal mail outside the presence of prison inmates. The government contends the district court abused its discretion by granting plaintiff Ralph R. Fourmont's motion for preliminary injunction. We have jurisdiction pursuant to 28 U.S.C. § 1292. We affirm.
 
 
 3
 Our review of a district court's grant of preliminary injunction is very limited. Diamontiney v. Borg, 918 F.2d 793, 795 (9th Cir.1990). We will reverse a grant of preliminary injunction only where the district court abused its discretion or based its decision on an erroneous legal standard or clearly erroneous factual findings.[1] Id. We may affirm a district court decision on any ground finding support in the record. Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 496 U.S. 937 (1990).
 
 
 4
 In order to obtain a preliminary injunction in this circuit, the moving party must demonstrate either (1) probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in his favor. Diamontiney, 918 F.2d at 795. The moving party is not required to show actual injury or prejudice to potential or pending litigation. Id. Rather, a "strong threat of irreparable injury before trial is ... adequate." Id. (quotation omitted).
 
 
 5
 In determining the reasonableness of a policy which constricts prisoners' constitutional rights, a court must consider (1) whether the policy is reasonably related to legitimate penological interests, (2) whether prisoners can exercise the constitutional right in other ways, (3) the feasibility of accommodating the constitutional right in light of prison resources and the effect such accommodation might have on inmates and guards, and (4) the absence of other means to achieve the policy's goal without impinging on prisoners' constitutional rights. Turner v. Safley, 482 U.S. 78, 89-90 (1987).
 
 
 6
 The extent of prisoners' rights with regard to the inspection of legal mail is uncertain. Wolff v. McDonnell, 418 U.S. 539, 577 (1974). It is clear that a prison policy of opening legal mail for inspection only in the presence of the inmate meets, and may even exceed, the demands of the Constitution. Wolff, 418 U.S. at 577. It is also clear that prison authorities must provide inmates with meaningful access to the courts. Bounds v. Smith, 430 U.S. 817, 822 (1977).
 
 
 7
 Here, prison policy dictated that "legal mail" could be opened and inspected for contraband only in the presence of the inmate. See DOC Division of Prisons Field Instruction 450.100 (effective January 1, 1992). The policy stated, however, that only mail which showed an identifiable legal address or institutional name and which was "clearly marked 'legal mail' on the outside front of the envelope" would be "considered and therefore handled as 'legal mail.' " See id.
 
 
 8
 Fourmont filed a motion for preliminary injunction on April 20, 1992. He alleged prison officials were violating his First, Fifth, Sixth, and Fourteenth amendment rights by opening, inspecting, and censoring legal mail addressed to him outside of his presence. Specifically, he alleged defendants violated his right to counsel and to access to the courts. He further alleged that the opening of his legal mail caused him to suffer irreparable harm.
 
 
 9
 Defendants argued in response that the prison policy of treating as legal mail only mail bearing the name and address of a recognizable legal institution and clearly stamped "legal mail" on its face adequately protected inmates' rights while allowing prison officials to inhibit the introduction and dissemination of contraband into the prison. The district court granted Fourmont's motion for preliminary injunction on July 6, 1992, on the ground that Fourmont had demonstrated both a reasonable probability of success on the merits and a distinct danger that he would suffer irreparable harm without an injunction before the matter came to trial. Defendants timely appeal.
 
 
 10
 Here, without determining which constitutional rights are implicated when prison authorities inspect readily identifiable legal mail, see Wolff, 418 U.S. at 577, we find the district court did not abuse its discretion or base its decision on an erroneous legal standard or clearly erroneous factual findings, see Diamontiney, 918 F.2d at 795.
 
 
 11
 Fourmont demonstrated that defendants were opening readily identifiable legal mail outside the presence of inmates. See Wolff, 418 U.S. at 577. In his petition for an injunction, Fourmont alleged he personally received legal mail which had been opened and censored outside his presence on January 13, February 25, February 26, March 31, and April 6, 1992. In his reply to defendants' response to his motion for a preliminary injunction, Fourmont further alleged he received legal mail which had been opened and inspected outside his presence on January 24, March 26, and February 7, and April 8, and April 23, 1992. In addition, Fourmont attached affidavits from other inmates alleging they had also received readily identifiable legal mail that had been opened, inspected, and censored outside their presence. Fourmont alleged all of the mail in question was either clearly marked "legal mail" or bore return addresses identifying the sender as a legal agency, court, or attorney. Thus, at the very least, Fourmont established that there are serious questions about the constitutionality of the prison policy toward legal mail.[2] See Diamontiney, 918 F.2d at 795. Fourmont further established that the balance of hardships tips sharply in his favor because the prison policy affects prisoners' access to the courts and because prison officials continued to open readily identifiable legal mail outside the presence of inmates even after he filed grievances requesting defendants to desist. See id. at 795-96.
 
 
 12
 Accordingly, we affirm the district court's preliminary injunction against defendants. The district court did not abuse its discretion by finding that the prison policy regarding legal mail threatened prisoners' constitutionally protected rights to access to courts and to assistance of counsel. See id. at 795. We stress, however, that we are not deciding the merits of Fourmont's claim that the defendants' actions interfered with those rights. See id. at 796.
 
 
 13
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Defendant does not contest the legal standard relied upon by the district court
 
 
 [2]
 We note that the prison changed its policy regarding legal mail following the district court's order enjoining the prison from enforcing the policy. Beginning May 1, 1992, the prison director ordered mailroom staff to process mail from the U.S. Marshals' Service as legal mail whether or not it was so stamped on the front of the envelope. This change in policy undermines defendants' argument that relaxing the definition of "legal mail" causes an undue burden on the mailroom staff. See Turner, 482 U.S. at 89-90